## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD L. BRICKER,** | : | **CIVIL NO. 1:CV-08-01033** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **CATHERINE MCVEY**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Ronald L. Bricker ("Bricker"), an inmate currently confined at the

State Regional Correctional Facility in Mercer, Pennsylvania ("SRCF-Mercer"), filed

this civil rights complaint pursuant to 42 U.S.C. § 1983 on May 28, 2008.  (Doc. 1.)

Named as defendants are members of the Pennsylvania Board of Probation and Parole

("Parole Board"),[1] several Department of Corrections' ("DOC") officials,[2] and several

named and unnamed attorneys employed by the Commonwealth of Pennsylvania.[3]

---

[1] The Parole Board members named in the caption of the complaint are as follows: Catherine C. McVey, Michael L. Green, Jeffrey R. Imboden, Matthew A. Mangino, Benjamin A. Martinez, Gerard N. Massaro, Michael M. Webster, and Lloyd A. White, and All John Doe and Jane Doe, Member Pennsylvania Board of Probation and Parole.  (Doc. 1 at 1.)

[2] DOC officials named in the caption of the complaint are as follows: Jeffrey A. Beard, Secretary; John S. Shaffer, Executive Deputy Secretary; Judith Viglione, Director, Bureau of Inmates Services; Michael W. Harlow, SRCF-Mercer Superintendent; Ferd J. Ruffo, Official SRCF; Cynthia L. Daub, Official SRCF; William (Bill) Woods, Unit Manager, SRCF-Mercer; and All John Doe and Jane Doe, Officials SRCF, SCI, Mercer who has denied Plaintiff for Parole.  (Doc. 1 at 1-2.)

[3] The legal officer named in the caption of the complaint are as follows: Thomas W. Corbett, Attorney General; All John Doe and Jane Doe, Deputy Attorney's in Pa.; All Attorney's working for any and all, City's County's, or State of Pa.; and All Attorney's working for all Federal Governments of the State of Pennsylvania or for State of Pa.  (Doc. 1 at 2.)

Before the court is a motion to dismiss Bricker's complaint.  (Doc. 12.)  For the reasons set forth below, the motion to dismiss will be granted with respect to Bricker's claims seeking monetary relief.  The motion to dismiss will be denied with respect to Bricker's claims seeking declaratory relief.  Further, Bricker will be afforded the opportunity to amend his complaint in order to clarify his claims for declaratory relief.

I.   **Background**

Bricker asserts that in 2004 he was convicted in the Court of Common Pleas of Dauphin County, Pennsylvania, on counts of bad checks, *see* 18 Pa. Cons. Stat. Ann. § 4105(a)(1), and theft by deception, *see* 18 Pa. Cons. Stat. Ann. § 3922.  Reading the complaint liberally, Bricker's complaint sets forth various claims against several of the defendants.[4]  Overall, the complaint addresses the parole review process generally, but provides little detail, if any, as to how Bricker's rights were violated by this process.[5]  Bricker is seeking declaratory and monetary relief.  The claims are as follows.

---

[4] Bricker does not set forth personal involvement as to all captioned defendants in his complaint.

[5] In his "addendum" to the complaint, Bricker asserts that he is "entitled to discharge on the writ of habeas corpus."  (Doc. 1 at 29.)  A search of the court's electronic document filing system reveals that Bricker filed a § 2254 habeas petition with respect to his Dauphin County conviction in this court on March 3, 2007.  *See Bricker v. Superintendent of SCI-Mercer, et al.*, No. 1:07-cv-00481, 2007 WL 4375934 (M.D. Pa. Dec. 12, 2007).  The court denied the petition on December 12, 2007, and the Third Circuit Court of Appeals denied Bricker a certificate of appealability.  (*Id*.)  Bricker has not filed a second or successive petition in this court.

### A.      Challenge to Parole Board Practices and Procedures

In the complaint, Bricker raises several claims with respect to the Parole Board's policies and procedures relating to parole decisions.  First, Bricker claims that the constitutional rights of an inmate are violated when an inmate's parole is denied and he is subsequently precluded from appealing that decision by means of an administrative appeal or direct appeal in court.  (Doc. 1 at 9.)  He further claims that the Parole Board violates an inmate's constitutional rights when it paroles an inmate, yet maintains supervision over that individual during the period of his parole.  (*Id*.)

Bricker also makes several complaints relating to the discretion of the Parole Board in making parole decisions.  Initially, he takes issue with the 1996 amendments to what is commonly called the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. § 331.1 *et seq*.  He claims that the 1996 amendments' changes in "public policy as to parole changed in 1996 from a client-centered policy emphasizing rehabilitation to one that emphasizes public safety, deterrence of crime and the incapacitation of criminals," *Mickens-Thomas v. Vaughn*, 217 F. Supp. 2d 570, 578 (E.D. Pa. 2002), violate an inmate's constitutional rights.  He asserts that as a result of those 1996 amendments, "[t]he Parole Board feels duty bound to hold back inmates where the court, in [the Parole Board's] opinion, has not gotten the conviction right and, therefore, has failed to protect the public."  (Doc. 1 at 10.)

In addition to that claim relating to the Parole Board's discretion, Bricker also

complains that the Parole Board's consideration of many factors in a parole decision,

*see* 61 P.S. § 331.19, creates a "highly prejudicial anti-social profile [of an inmate]

which is substituted for and replaces the trial court's profile." (Doc. 1 at 10.) This

practice, he claims, "demoniz[es] an inmate." (*Id*.) In a related claim, Bricker also

accuses the Parole Board of collecting only "negative reports" for support of its

denial of parole, without considering "any kind of record which reflects contrary

conduct." (*Id*. at 11.)

Bricker also claims that an inmate's constitutional rights are violated when the

Parole Board denies parole to an inmate who refuses to take responsibility for the

crimes of which he has been convicted. (*Id*.) He asserts that the Parole Board

considers this fact alone as the determining factor in its decision to deny parole. (*Id*.)

Further, if the DOC reports to the Parole Board that an inmate has refused to take

responsibility for his crimes, "it is vertually [sic] certain that the Parole Board will

deny parole." (*Id*. at 12.)

## B.     Challenge to DOC Policies and Procedures

Bricker also asserts several claims with respect to the DOC's grievance system

as it relates to treatment of inmates and parole decisions. Specifically, Bricker claims

he is "seeking major [reform] in practices and procedures culminating in the way of

which the inmate is treated during the searching of his cell or cubit, such as taking the

things of which he or she buys on commissary and throwing the item away, and in all

4

Parole decisions."[6]  (*Id*. at 3.)

Bricker also claims that the DOC violates an inmate's constitutional rights when it submits to the Parole Board an unfavorable recommendation because the inmate has failed to take responsibility for his crimes.  (*Id*. at 12.)  Bricker asserts that the inmate's failure to accept responsibility for his crimes unconstitutionally becomes the sole basis for the DOC to recommend denial of parole to the Parole Board.  (*Id*.)

### C.    Malfeasance, Misfeasance, and Nonfeasance

In the complaint, Bricker sets forth separate claims of malfeasance, misfeasance, and nonfeasance.  Generally, Bricker accuses the Parole Board members of making parole decisions in which "a great number of votes cast by Parole Board Members are not the product of an exercise of discretion.  The true driving force dictating these votes springs from bureaucratic misfeasance, malfeasance and nonfeasance."  (Doc. 1 at 6.)  His detailed claims of malfeasance, misfeasance, and nonfeasance are as follows.  Initially, Bricker claims that the Parole Board members commit malfeasance when they consider only an inmate's refusal to take responsibility for his crimes, without considering other factors, when making a parole decision.  (*Id*. at 13.)

---

[6] It is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977).  Even if the state provides for a grievance procedure, as Pennsylvania does, violations of those procedures do not amount to a § 1983 cause of action.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Thus, even if there exists flaws in the DOC's grievance procedure, no constitutional claim has been stated.

Further, Bricker claims that the DOC commits misfeasance when it orders

inmates to undergo programs which have not been ordered by the sentencing court.

(*Id*.)  Specifically, the DOC

> has a practice and an established state procedure of: (1) Ordering
> prescriptive plans of programs which were not giving [sic] by the
> sentencing Judge of Court; (2) refusing to offer programs which were
> order [sic] by sentencing Judge; (3) refusing credit for a completed
> program because it was not taken at their institution; (4) requiring
> programs carrying a stigma which are unrelated to an offender's crime
> (i.e. ordering a sex offender course or a sex DNA test for an inmate who
> was never convicted of a sex crime).

(*Id*.)  This misfeasance allegedly leads to the denial of parole.

Bricker also claims that the Parole Board members commit nonfeasance when

they fail to consider positive reports on an inmate when a negative report has already

been presented.  "Defendants collect negative reports, while burying or ignoring

positive reports.  These errors adversely affect parole prospects."  (*Id*.)

## D.  **Due Process Violations**

In the complaint, Bricker also sets forth due process violations.  In his first

asserted violation, "Unconstitutional Reliance upon Unchanging Factors," (*id*. at 14),

Bricker claims that Defendants "have a practice and an established state procedure of

relying upon subjective judgments springing from the nature of the offense for

denying parole."  (*Id*.)  He avers that the Parole Board's practices are violating due

process because it is

> required to take into account the existence of all other factors beyond the

6

> nature of their crime and the reprimandation [sic] by the institution
> holding inmates if there is no grounds of reasons for the institution
> denying parole except on the grounds that the inmate has a law suit
> against that institution such as in this case where Ronald L. Bricker, has
> a law suit against officials of SCI, SRCF Mercer, Pa., or such as their
> prison records.

(*Id*. at 15.)

In his second asserted violation, "Lack of Notice," (*id*.), Bricker claims that at the time of sentencing on a parole revocation, the court does not inform the parole violator "if they are paroled and parole is revoked, pursuant to the Parole Act, the time served on parole can be forfeited and added to the end of their sentence." (*Id*. at 16.) He explains further as follows:

> When the Parole Board canceling [sic] credit for time served in good
> standing between the granting of parole and the revoking of parole and
> adding this time to the end of the sentence, by doing this the expiration
> date set by the trial court is expunged and a new expiration date replaces
> the expiration date set by the trial court.

(*Id*.) This practice, Bricker claims, is a violation of due process because "a criminal defendant is not told at sentencing that their prison term can be extended by the Parole Board." (*Id*.)

## E.   Separation of Powers

Bricker also sets forth claims with respect to separation of powers.  In his first claim, "Violation of Usurpation of Judicial Authority," (*id*. at 17), Bricker claims that the Parole Board is improperly performing a judicial function in overseeing revocation of parole because it does not have "sentencing authority," and thus "there

is no constitutional or statutory authority for the Parole Board to impose a criminal sentence of its own making."  (*Id*. at 18.)  Instead, he claims, "[t]he Parole Board's only power regarding imprisonment is to order an offender to serve the remainder of a previously imposed sentence."  (*Id*.)

In his second claim, "Denying Parole for Failing to Confess to Crime," (*id*.), Bricker claims that the Parole Board is improperly performing a judicial function when it makes a determination that a criminal defendant who does not confess to a crime "must not be released until they have served their maximum sentence or confessed to crimes, whichever occurs first."  (*Id*.)

### F.   Ex Post Facto Clause

In his final claim, Bricker asserts that the 1996 amendments to the Parole Act violate the Ex Post Facto Clause because unlike the 1941 statute which caused the offender to be released on parole closer to his minimum date, the 1996 amendments cause an offender to be released on parole closer to his maximum date.  (*Id*. at 19.) This change, Bricker claims, impermissibly imposes additional punishment on offenders.  (*Id*.)

## II.   Legal Standard - Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id*. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S. Ct. at 1965; *accord*, *e.g.*, *Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v.*

*Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most

favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).

*Accord Phillips*, 515 F.3d at 233.  If the facts alleged are sufficient to "raise a right to

relief above the speculative level" such that the plaintiff's claim is "plausible on its

face," a complaint will survive a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965,

1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir.

2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  This requirement "calls

for enough facts to raise a reasonable expectation that discovery will reveal evidence

of" necessary elements of the plaintiff's cause of action.  *Phillips*, 515 F.3d at 234

(quoting *Twombly*, 127 S. Ct. at 1965).

      "To decide a motion to dismiss, courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public

record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263,

268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d

383, 388 (3d Cir. 2002) ("Although a district court may not consider matters

extraneous to the pleadings, a document *integral to or explicitly relied* upon in the

complaint may be considered without converting the motion to dismiss into one for

summary judgment.") (internal quotation omitted).  However, the court may not rely

on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild,

O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the

complaint liberally and draw fair inferences from what is not alleged as well as from

what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v.

Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to

less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S.

Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before

dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee

Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston

v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113,

116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the

grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d

229, 236 (3d Cir. 2004).

## III.   **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[7]  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id*.

In their brief in support of the motion to dismiss, Defendants contend that the Eleventh Amendment bars the court from reviewing the claims against state officials sued in their official capacity.  Defendants also contend that Bricker's claims for

---

[7] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

damages regarding the challenge to his parole proceedings are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Lastly, Defendants claim that Bricker has failed to state a viable claim upon which relief may be granted. The court will discuss Defendants' first two arguments with respect to Bricker's claims for monetary damages. The court will, however, grant Bricker the opportunity to amend his complaint as to the claims for declaratory relief with respect to the constitutionality of parole proceedings. Thus, the court will deny Defendants' motion to dismiss as to those claims.[8]

## A.   Immunity from Suit

In his complaint, Bricker sets forth the capacities in which he sues certain Defendants.[9] In their brief in support of the motion to dismiss, Defendants contend that the Eleventh Amendment bars the claims set forth against the state officials being sued in their official capacities.

Initially, Bricker claims that he is suing the following Parole Board members "solely in their Official Capacities:" Catherine C. McVey, Michael L. Green, Jeffrey

---

[8] The court notes that in their brief in support of the motion to dismiss, Defendants claim that Bricker is only seeking monetary relief. (*See* Doc. 13 at 3.) Further, Defendants' arguments in support of dismissal of the complaint are based in part on Bricker seeking only monetary relief. However, Bricker does in fact state in his complaint that in addition to seeking money damages, he also seeks "injunctive declaratory relief available through § 1983." (Doc. 1 at 3.)

[9] While Bricker indicates in the caption of the complaint that, "All Defendant's names herein are being sued in their individual and official capacity defendant's," (Doc. 1 at 2), the body of the complaint clearly sets forth Bricker's intentions with respect to the capacities in which he sues each Defendant. Reading the complaint liberally, the court will follow the clear language set forth by Bricker in the body of his complaint.

R. Imboden, Matthew T. Mangino, Benjamin A. Martinez, Gerard N. Massaro, Michael M. Webster, and Lloyd A. White.  (Doc. 1 at 5.)  Further, Bricker claims that he is suing the following DOC officials in their official capacity only: Jeffrey A. Beard, John S. Shaffer, and Judith Viglione.  (*Id*. at 6-7.)  Another set of DOC officials, "All John Doe and Jane Doe, Officials SRCF, SCI, Mercer who has denied Plaintiff for Parole," (*Id*. at 2), are sued in their individual and official capacities, (*Id*. at 7).  Finally, Bricker claims that he is suing in their official capacities the following legal officers located in Pennsylvania: Thomas Corbett, Attorney General of Pennsylvania; "All John Doe and Jane Doe, Deputy Attorney's in Pa."; "All Attorney's working for any and all City's County's, or State of Pa."; and, "All Attorney's working for all Federal Governments of the State of Pennsylvania or for State of Pa."  (*Id*. at 2.)  To the extent that Bricker is seeking monetary damages from these individual Defendants in their official capacities, such a claim is barred under the Eleventh Amendment.  *See Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990). Bricker's claim against the above-referenced Parole Board members, the above-referenced DOC officials, and the above-referenced legal officers, for monetary damages in their official capacities will be dismissed.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

### B. *Heck v. Humphrey*

As set forth above, Bricker's complaint alleges that prisoners are deprived of

constitutionally protected rights in a variety of ways during the parole review process.

In their brief in support of the motion to dismiss, Defendants argue that under the law

enunciated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), Bricker

has failed to state a cognizable claim.  In particular, Defendants argue that because

Bricker was found guilty of several counts of bad checks in 2004 and because that

conviction has not been overturned, expunged or otherwise resolved in Bricker's

favor, Bricker fails to set forth a cognizable claim for money damages under § 1983.

In *Heck*, the Supreme Court announced the "favorable-termination rule," which

forecloses certain § 1983 actions for plaintiffs who have been convicted of criminal

charges.  In *Heck*, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into question
> by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §
> 2254.  A claim for damages bearing that relationship to a conviction or
> sentence that has *not* been so invalidated is not cognizable under § 1983.
> Thus, when a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate that
> the conviction or sentence has already been invalidated.

*Id*. at 486-87 (emphasis in original).  "Because an action attacking the validity of

parole proceedings calls into question the fact and duration of confinement,[1] it must

satisfy the *Heck* element."  *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158,

161 (5th Cir. 1995); *see also Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (*Heck* applies to challenges to revocation of parole); *Benson v. New Jersey State Parole Bd.*, 947 F. Supp. 827, 833 (D.N.J. 1996) (applying *Heck*, the plaintiff's claim, premised on a denial of a timely parole hearing and the allegedly erroneous calculation of his parole eligibility date, is "not cognizable, unless [Plaintiff] can prove that his sentence, or more specifically the calculation of the duration of his sentence, has been invalidated . . . .").

In the instant case, Bricker has not alleged and cannot demonstrate that his current sentence has already been invalidated.  He does not allege that any parole eligibility or revocation proceeding has been reversed, expunged, or set aside by a state court, or called into question by a federal court's issuance of a writ of habeas corpus.  As such, in order to consider Bricker's claim for damages based on the flaws in the parole review process, the court would have to imply the invalidity of that process.  Under *Heck*, the court is foreclosed from making such a consideration prior to Bricker demonstrating that his conviction or sentence has been reversed, expunged, or declared invalid.  Thus, Bricker's claims for money damages are not cognizable under § 1983 at this time.

Bricker also seeks declaratory relief under § 1983.  It is well-settled that a prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement.  *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  "He must seek

federal habeas corpus relief (or appropriate state relief) instead." *Id*.  A § 1983 action

is barred if a plaintiff's success in the action would necessarily demonstrate the

invalidity of the confinement or its duration.  *See id.* at 81-82.  In *Wilkinson*, the

plaintiffs sought relief that would render the state procedures used to deny parole

eligibility and parole suitability invalid.  *See id.* at 82.  The Supreme Court

determined that the plaintiffs' claims in *Wilkinson* were cognizable under § 1983

because success would not mean that the plaintiffs would be immediately released or

have a shorter confinement.  *See id.*  Rather, success would only mean a new parole

eligibility review or a new parole hearing.  *See id.*  Thus, their claims did not lie "at

the core of habeas corpus."  *Id*. (internal quotation marks and citation omitted).

Similar to the claims in *Wilkinson*, Bricker's claims do not lie "at the core of

habeas corpus."  Bricker seeks, in part, relief that would render invalid the state

procedures used to deny parole eligibility.[10]  Further, it does not appear that Bricker is

seeking an injunction ordering his immediate or speedier release from incarceration.

Success for Bricker means at most new eligibility review, which, as in *Wilkinson*, "at

most will speed *consideration* of a new parole application."  *Id*. (emphasis in

original).  Because Bricker's claims for declaratory relief implies claims for future

relief, he has asserted a cognizable claim under § 1983.  However, the court will grant

---

[10] For example, Bricker argues that his constitutional rights were violated because the Parole Board considers prison officials' reports of an inmate's failure to admit to his crimes the sole basis for denial of parole.

Bricker the opportunity to file an amended complaint to clarify his claims for declaratory relief with respect to parole proceedings as they apply to him.

In preparing his amended complaint, Bricker is advised that, among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.*; *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

In the complaint, as it stands now, Bricker makes a number of claims with respect to the parole review process. Bricker appears to be making claims on behalf of all prisoners facing a parole decision before the Parole Board.[11] But his claims are stated generally, with little reference to Bricker himself. Reading the complaint liberally, it appears that Bricker is claiming that he was denied parole in retaliation

---

[11] In drafting his amended complaint, Bricker is reminded that a class action can only be maintained if the class representative "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "When confronting such a request from a prisoner, courts have consistently held that a prisoner acting *pro se* 'is inadequate to represent the interests of his fellow inmates in a class action.'" *Carter v. Taylor*, 540 F. Supp. 2d 522, 527 (D. Del. 2008).

for a lawsuit he filed against SCRF-Mercer officials and because he refused to admit to his crimes.  The complaint does not sufficiently allege each Defendant's personal involvement or state that any conduct attributable to each of them amounted to a violation of Bricker's constitutional rights.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (in order to state a viable claim under § 1983, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim).  To meet the standards set forth in Rule 8, Bricker's amended complaint must at least contain a modicum of factual specificity, identifying the defendants and the particular conduct of the defendants purported to have harmed the plaintiff.  "A complaint which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice."  *Purveegiin v. Pike County Corr. Facility*, No. 3:CV-06-0300, 2006 WL 1620219 (M.D. Pa. June 6, 2006).

In addition, Bricker is advised that the "amended complaint must be complete in all respects.  It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed."  *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  Additionally, it must specify the existence of actions by defendants which have resulted in constitutional deprivations.  *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 370–73 (1976).

Finally, Bricker is advised that if he fails, within the applicable time period, to file an amended complaint adhering to the standards set forth above, the original complaint will be addressed on the merits.

An appropriate order will be entered.

s/Sylvia H. Rambo
United States District Judge

Dated:  April 7, 2009.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONALD L. BRICKER,** | : | **CIVIL NO. 1:CV-08-01033** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **CATHERINE MCVEY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

**AND NOW**, this 7th day of April, 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The motion to dismiss the complaint (Doc. 12) is **GRANTED** as to Plaintiff's claims for monetary relief.

2) The motion to dismiss the complaint (Doc. 12) is **DENIED** as to Plaintiff's claims for declaratory relief.

3) Plaintiff shall file an amended complaint in accordance with the terms of this order on or before May 6, 2009.

4) If Plaintiff fails to timely file an amended complaint, the original complaint shall be considered on the merits.

                     __s/Sylvia H. Rambo_____
                     United States District Judge